IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

# 96 - 14351 CIV-PAINE

**MAGISTRATE JUDGE
VITUNAC**

WAYNE BYTHWOOD, JAMES
SMITH, MORRIS MCDANIEL,
NAPOLEON DUBOIS, MARCUS
EMANUEL, ADRIENNE MARTIN,
FELICIA SKINNER, CARMEN
REYNOLDS, KEVIN LAWSON,
and RON BACON,

CASE NO.:

     Plaintiffs,

vs.

STATE OF FLORIDA DEPARTMENT
OF CORRECTIONS a/k/a MARTIN
CORRECTIONAL INSTITUTION,
THOMAS TIPPENS, CHESTER
LAMBDIN, THOMAS CREWS, CAROL
HAMMER, HENRY ALFORD, WILLIAM
DOTSON, GARY MCKLAIN, J.W.
BARTON, SETH ADAMS, JOHN
CATTERMAN, TERRY DOWLING,
DAVID FARCUS, JOHN CADE, and
DOUGLAS KRUGER,

     Defendants.

_____/

**JURY TRIAL DEMANDED**

**NIGHT BOX
FILED**

DEC - 5 1996

CARLOS JUENKE
CLERK, USDC / SDFL / FTL

## COMPLAINT

Plaintiffs, Wayne Bythwood, James Smith, Morris McDaniel, Napoleon Dubois, Marcus

Emanuel, Adrienne Martin, Felicia Skinner, Carmen Reynolds, Kevin Lawson, and Ron Bacon,

complaining of defendants, allege:

I.
## NATURE OF THE CASE

(1)    This is an action for injunctive relief, declaratory relief, monetary damages, and other

relief arising under the Thirteenth and Fourteenth Amendments to the United States Constitution,

Section I of the Civil Rights Act of 1871, 17 Stat. 13, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et. seq.*, and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 (1992).

## II
## CONDITIONS PRECEDENT

(2)      Plaintiffs Wayne Bythwood, James Smith, Morris McDaniel, Napoleon Dubois, Marcus Emanuel, Adrienne Martin, Felicia Skinner, Carmen Reynolds, Kevin Lawson, and Ron Bacon each timely filed charges of discrimination against defendant complaining of the acts of discrimination herein described. The EEOC has issued each plaintiffs Wayne Bythwood, James Smith, and Morris McDaniel a letter of right to sue.[1] The right to sue letters are attached to this complaint as composite Exhibit "A." This action is commenced within ninety days of the receipt of each right to sue letter as required by Title VII. Plaintiffs have fully complied with all prerequisites and all conditions precedent to this Court exercising jurisdiction pursuant to Title VII and the Florida Civil Rights Act of 1992. All plaintiffs sue under 42 U.S.C. § 1981 and 42 U.S.C.§ 1983. Remedial exhaustion is not required for plaintiffs' claims under 42 U.S.C. § 1981 or § 1983.

## III.
## JURISDICTION AND VENUE

(3)      This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) in order to protect rights guaranteed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. This Court has jurisdiction over the

---

[1] The EEOC is in the process of issuing plaintiffs Napoleon Dubois, Marcus Emanuel, Adrienne Martin, Felicia Skinner, Carmen Reynolds, James Smith, Kevin Lawson, and Ron Bacon letters of right to sue. Plaintiffs will amend this lawsuit to include counts for violation of Title VII and the Florida Civil Rights Act for these seven plaintiffs once their right to sue letters are issued.

Florida statutory claim under its supplemental jurisdiction as the elements of proof in all four counts of this complaint are similar. *See*, *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986); *Walters v. City of Atlanta*, 803 F.2d 1135, 1143 (11th Cir. 1986); *Chaline v. KCOH, Inc.*, 693 F.2d 477, 479 (5th Cir. 1982).

## IV.
## PARTIES

(4)     Plaintiffs are each Black individuals who are either currently employed or were formerly employed by defendant State of Florida Department of Corrections, Martin Correctional Institute ("MCI").

(5)     Defendant MCI is an employer as defined in Title VII and is subject to suit for all causes of action asserted herein.

(6)     Defendant Thomas Tippens is an individual who works for MCI as Colonel and plaintiffs' supervisor and is capable of being sued. Tippens is Caucasian. Tippens is a policy maker.

(7)     Defendant Chester Lambdin is an individual who works for MCI as Superintendent and plaintiffs' supervisor and is capable of being sued. Lambdin is Caucasian. Lambdin is a policy maker.

(8)     Defendant Thomas Crews is an individual who works for MCI as Superintendent and plaintiffs' supervisor and is capable of being sued. Crews is Caucasian. Crews is a policy maker.

(9)     Defendant Carol Hammer is an individual who works for MCI as Personnel Manager and plaintiffs' supervisor and is capable of being sued. Ware  is Caucasian. Ware is a policy maker.

(10)     Defendant Henry Alford is an individual who works for MCI as Assistant Superintendent and plaintiffs' supervisor and is capable of being sued. Alford is Caucasian. Alford

3

is a policy maker.

(11)    Defendant William Dotson is an individual who works for MCI as Regional Inspector Supervisor and plaintiffs' supervisor and is capable of being sued. Dotson is Caucasian. Dotson is a policy maker.

(12)    Defendant Gary McKlain is an individual who works for the Florida Department of Corrections as Assistant Inspector General and  plaintiff's supervisor and is capable of being sued. McKlain is Caucasian. McKlain is a policy maker.

(13)    Defendant J.W. Barton is an individual who works for MCI as Captain and plaintiffs' supervisor and is capable of being sued. Barton is Caucasian. Barton is a policy maker.

(14)    Defendant Seth Adams is an individual who worked for MCI as Sergeant and plaintiff's supervisor and is capable of being sued. Adams is Caucasian. Adams is a policy maker.

(15)    Defendant John Catterman is  an individual who works for MCI as Sergeant and plaintiffs' supervisor and is capable of being sued. Catterman is Caucasian. Catterman is a policy maker.

(16)    Defendant Terry Dowling is an individual who works for MCI as Lieutenant and plaintiffs' supervisor and is capable of being sued. Dowling is Caucasian. Dowling is a policy maker.

(17)    Defendant David Farcus is an individual who works for MCI as Assistant Superintendent and plaintiffs' supervisor and is capable of being. Farcus is Caucasian. Farcus is a policy maker.

(18)    Defendant John Cade is an individual who works for MCI as Lieutenant and plaintiffs' supervisor and is capable of being sued. Cade is Caucasian. Cade is a policy maker.

(19)    Defendant Douglas Kruger is an individual who works for MCI as Sergeant and

4

plaintiffs' supervisor and is capable of being sued under 42 U.S.C. § 1981. Kruger is Caucasian. Kruger is a policy maker.

## V.
## FACTS

(20)    Plaintiff Wayne Bythwood ("Bythwood") was hired by MCI in 1985 as a Recreational Supervisor. Bythwood is a Black-Haitian.

(21)    Since the inception of his employment with MCI, Bythwood has been subject to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of his status as a Black. Bythwood has been subjected to retaliation by MCI agents and employees for his opposition to this racial discrimination.

(22)    In 1993, Colonel Thomas Tippens ("Tippens") said in Bythwood's presence that he (Tippens) "would guide all the Haitians who were HIV positive, put them back in the community in Miami, let them spread the disease all over that community and kill them all off and we'll be done with all of them." Bythwood reported Tippens' comment to Chester Lambdin ("Lambdin"), Superintendent and MCI's agent and employee, but Tippens was not reprimanded. Rather, Tippens was promoted to Assistant Superintendent of Washington Correctional Institution in Northern Florida.

(23)    In 1993, Bythwood filed a complaint with the State of Florida Department of Corrections alleging that he was being discriminated against at MCI. In 1994, Bythwood filed a complaint with the EEOC complaining of acts of discrimination by MCI supervisors and employees. A few days after he filed his complaint with the EEOC, Bythwood's office at MCI was raided by Thomas Crews ("Crews"), Superintendent of MCI and MCI's agent and employee. Crews secretly

entered Bythwood's office after Bythwood left MCI for the day, put locks on the cabinets in Bythwood's office, and stole a computer disk from Bythwood's computer. The search was done without informing Bythwood that it was going to take place, contrary to MCI policy, and was done solely in retaliation for Bythwood's EEOC complaint.

(24)    Bythwood has been passed over for promotions because he is Black and was constructively discharged by MCI.

(25)    Plaintiff James Smith ("Smith") was hired by MCI in April 1990 as a Corrections Officer. Smith is a college graduate and is qualified for promotions from Corrections Officer to higher ranking positions.

(26)    Smith has been denied and excluded from many promotions since the inception of his employment because of his status as an African-American.

(27)    In 1993, Smith applied for a Sergeant position. The position was ultimately given to Sergeant Leach, who had a poorer performance record than Smith, an abundance of reprimands, and was less experienced than Smith. Smith asked Carol Hammer ("Hammer") Personnel Manager and MCI's agent and employee why he (Smith) was not granted the promotion. Hammer told Smith that he was "missing" seventeen (17) days from the four years minimum experience that the position required. However, the Sergeant position only required <u>one</u> year of experience.

(28)    In 1993, Smith applied for a Sergeant's position in the Drug unit. This position was given to Edward Williams, a Caucasian who had less experience and was less senior than Smith.

(29)    Smith did not receive a promotion or a raise until late 1994, after he filed a charge of discrimination alleging that his failure to get promoted was based on his status as an African-

6

American. This was done by MCI in an attempt to silence Smith and have the EEOC drop Smith's complaint.

(30)    In 1994, Smith applied for an Inspector position. Smith was not permitted to interview for the position even though he was qualified for it, because Hammer decided to "add" additional requirements to the position at the last minute so Smith would be excluded from it.

(31)    In 1995, Smith applied for a Fire Chief position. The job was given to Richard Bryant, a Caucasian who had less experience than Smith and who was less senior than Smith.

(32)    Smith was reprimanded for taking time off to tend to his ill child and for coming in late when his child was ill. Caucasian employees were never reprimanded for being late, and were always allowed to take time off if one of their children needed tending to.

(33)    Smith has been an excellent employee and has always received above-satisfactory performance reviews.

(34)    Plaintiff Morris McDaniel ("McDaniel") was hired by MCI in 1988 as a Probation Officer. Smith has been an excellent employee and has received above satisfactory reviews.

(35)    McDaniel has been denied and excluded from many promotions since the inception of his employment because of his status as an African-American.

(36)    In 1993, McDaniel applied for an Institutional Investigator position. McDaniel was interviewed by Henry Alford ("Alford"), Assistant Superintendent and MCI's agent and employee, and William Dotson ("Dotson"), Regional Inspector Supervisor and MCI's agent and employee. Alford told McDaniel "we made a mistake giving you an interview" even though McDaniel met the minimum qualifications for the position. Alford told McDaniel that even if he (McDaniel) was given the position, he would not receive a pay increase. Philip McCaskill, a Caucasian, was less

7

experienced than McDaniel but was given the position and received a pay increase.

(37)    In 1993, McDaniel applied for a Regional Inspector II position. McDaniel sent the application to Gary McKlain, Assistant Inspector General and an agent and employee of the Florida Department of Corrections. McDaniel called McKlain to see if McKlain received the application, but McKlain denied receiving the application and banged down the telephone on McDaniel.

(38)    In 1995, McDaniel was able to secure a promotion to Lieutenant, but was forced by Hammer to accept a 10% pay decrease, even though the job contained more responsibilities. When Caucasians are promoted, they are given a pay increase.

(39)    Smith has been subjected to constant racial harassment from his supervisors at MCI because of his status as an African-American. Tippens, head of the Security Department and MCI's agent and employee, told Smith that he looked "like a drug dealer" referring to Smith's jewelry and Smith's Black skin. Tippens said this to Smith on multiple occasions. Smith heard J.W. Barton ("Barton"), Captain and MCI's agent and employee refer to a Black employee as a "Cajun nigger." Smith also heard Sergeant Seth Adams ("Adams"), MCI's agent and employee, refer to black inmates as "dirty niggers."

(40)    Plaintiff Napoleon Dubois ("Dubois") was hired by MCI in 1987. Dubois' title at MCI is Captain.

(41)    Since the inception of his employment with MCI, Dubois has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of his status as a Black. Dubois has been subjected to retaliation by MCI agents and employees for his opposition to this racial discrimination.

(42)    Dubois is treated more harshly than his White co-workers. White officers and

8

supervising policy makers have gone to all lengths to harass Dubois. Dubois has not been promoted due to his status as a Black. Dubois has received racial hate mail and other racially derogatory material in his mailbox placed there by his Caucasian supervisor and Caucasian co-workers.

(43)    In 1987, Dubois discovered a black doll hanging in the officer's control room with a noose around its neck. John Cotterman ("Cotterman"), Sergeant and MCI's agent and employee, saw the doll hanging in the noose but did not take it down. Dubois took the doll and noose down, and reported the incident to Lieutenant Terry Dowling ("Dowling"), MCI's agent and employee. Dowling laughed at Dubois and told him not to write an incident report. Dowling instructed Dubois to put the doll and noose in an evidence locker. The next day, the doll and noose were no longer in the locker, and no employee of MCI knew of the whereabouts of the doll and noose. Dave Farcus ("Farcus"), Assistant Superintendent and MCI's agent and employee, admitted that he knew about the incident and did nothing. The disappearance of the doll and noose amount to a coverup of this racial incident.

(44)    Marcus Emanuel was hired by MCI in 1985. Emanuel's position is Assistant Recreation Therapist.

(45)    Since the inception of his employment with MCI, Emanuel has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of his status as a Black. Emanuel has been subjected to retaliation by MCI agents and employees for his opposition to this racial discrimination. Emanuel has repeatedly been referred to by the term "nigger," had his car vandalized, had marijuana planted in his car and his file cabinet, and had hate mail left in his personal mailbox, and had his life threatened by Caucasian MCI employees and Caucasian MCI supervisors.

9

(46)    In 1995, Officer Barfield ("Barfield"), MCI's agent and employee, told several officers at MCI that Emanuel was a "known drug dealer" and that it was "just a matter of time before [Emanuel] was caught." Barfield said that Emanuel was "no different from the inmates." Barfield made this reference to Emanuel generalizing that all Blacks are criminals who sell drugs.

(47)    Adrienne Martin ("Martin") was hired by MCI in late 1995 as a Corrections Officer, after she graduated from the police academy.

(48)    Since the inception of her employment with MCI, Martin has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of her status as a Black. Martin has been subjected to retaliation by MCI agents and employees for her opposition to this racial discrimination.

(49)    During her tenure at MCI, Martin was an exemplary employee.

(50)    Martin is constantly harassed by Sergeant Davis ("Davis"), MCI's agent and employee, Major Taylor ("Taylor"), MCI's agent and employee, and Sergeant Polio ("Polio"), MCI's agent and employee. Davis, Taylor, and Polio regularly use racial epithets when talking to Martin or when describing Martin as a Black female employee. All three men regularly demean and try to belittle Martin because she is a Black female.

(51)    Davis, Taylor, and Polio gave Martin written reprimands for five false accusations in less than one month. All accusations were "created" by Davis, Taylor, and Polio, and Martin was not given an opportunity to deny or respond to the false charges.

(52)    Martin was terminated on January 12, 1996 by Hammer through a letter that Hammer sent to Martin. Hammer gave Martin one hour to vacate MCI's premises, or else Martin would be forcibly removed. The reasons advanced by MCI for Martin's termination were pretext, and Martin

was terminated solely because of her status as an African-American female.

(53)    Plaintiff Felicia Skinner ("Skinner") was hired by MCI in 1985 as a Corrections Officer.

(54)    Since the inception of her employment with MCI, Skinner has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of her status as a Black. Skinner has been subjected to retaliation by MCI agents and employees for her opposition to this racial discrimination. Skinner was denied various promotions due to her race and gender.

(55)    Skinner's supervisors have used racial epithets when referring to Skinner and constantly subjected Skinner to racial harassment. Skinner's supervisors never reprimanded Caucasian employees that called Skinner the term "nigger" and harassed Skinner, even after Skinner wrote reports about the incidents. Skinner was treated more harshly than her Caucasian co-workers.

(56)    Lieutenant John Cade ("Cade"), MCI's agent and employee, called Skinner into his office and told her to sing "Happy Birthday" to him. Skinner refused, and Cade ordered Skinner to sit on his desk and allow him to perform oral sex on her.

(57)    Cade, Sergeant Douglas Kruger ("Kruger"), MCI's agent and employee, Mark Hiser ("Hiser"), MCI's agent and employee, and Myrtle Pervis ("Pervis") spread false rumors that Skinner was having sex with MCI inmates. These were all lies and unfounded.

(58)    Plaintiff Carmen Reynolds was hired by MCI in 1993 as a Senior Registered Nurse.

(59)    Since the inception of her employment with MCI, Reynolds has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of her status as a Black female. Reynolds had been subjected to retaliation by MCI agents and

11

employees for her opposition to this racial and gender discrimination. Reynolds was denied various promotions due to her race and gender.

(60)    In August 1995, Reynolds had a car accident where she fractured her ribs and got a hematoma on her chest. When Reynolds returned to MCI, she was harassed by her supervisors. Officer McHaney intentionally locked Reynolds in the infirmary with dangerous inmates. When Reynolds was released from the infirmary, she confronted McHaney, who retaliated against her by calling in six other officers who surrounded her in a threatening manner. The officers put Reynolds in fear of her life. Reynolds called her supervisor, Linda Olivio, to ask for her help, and finally was able to break away from the group. McHaney preceded to give Reynolds a written reprimand in retaliation for her calling Olivio for help. McHaney alleged that Reynolds was being "rude and disrespectful to an officer" and was being "a security risk." McHaney gave Reynolds several other written reprimands for trumped up charges.

(61)    Plaintiff Kevin Lawson was hired by MCI as a Corrections Officer.

(62)    Since the inception of his employment with MCI, Lawson has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of his status as a Black. Lawson has been subjected to retaliation by MCI agents and employees for his opposition to this racial discrimination. Lawson was denied various promotions due to his status as a Black.

(63)    Lawson was named Officer of the Year, yet was placed on alternate duty by his supervisors in 1995.

(64)    In June 1994, Lawson purchased an over the counter aphrodisiac and put it in his pocket. Lawson was reprimanded for this, and ultimately terminated for it in November 1995.

12

Caucasians at MCI have been accused of more serious acts but were not terminated. Cade was caught selling bullets to a federal agent and was only demoted. Six month later, Cade was reinstated to Lieutenant. Sergeant Chaluisan handcuffed a female officer to a fire extinguisher, pulled her pants down, and took poloroid photographs of her. Chaluisan was suspended, but has since been reinstated. Officer Michael Langford was arrested for Driving Under the Influence ("DUI"), but was not reprimanded. Officer Cassella was arrested for DUI, but was not suspended. Officer Kerr was arrested for Possession of Marijuana, but was not suspended. Sergeant Rowell, Officer Chris Proper, Officer Palmieri were each arrested for DUI, but were not suspended. Officer Burgolt was caught sever times sleeping on the job, was terminated and then rehired.

(65)    Lawson filed an charge of discrimination with the EEOC. Soon thereafter, Lawson was terminated by MCI. The reasons advanced for Lawson's termination were pretext. Lawson was terminated because of his status as an African American.

(66)    Plaintiff Ron Bacon ("Bacon") was hired by MCI in 1985 and was transferred to the Drug Unit in 1994.

(67)    Since the inception of his employment with MCI, Bacon has been subjected to continuous racial harassment and derogatory racial epithets by agents and employees of MCI because of his status as a Black. Sergeant John Catterman ("Catterman"), a Caucasian, used the term "nigger" to Sergeant Payton in Bacon's presence. Bacon complained to Captain Picket ("Picket") about the racial epithet, but Picket did nothing. Catterman was not even reprimanded. Bacon has been subjected to retaliation by MCI agents and employees for his opposition to this racial discrimination.

(68)    Bacon has been constantly harassed by Tippin throughout his employment. Tippens

13

denied Bacon his paycheck on many occasions, constantly humiliates Bacon in front of co-workers and inmates, refuses to allow Bacon to transfer to other work areas, changes Bacon's shifts frequently without explanation and tries to make Bacon's work atmosphere at MCI as miserable as possible. Tippens went out of his way to antagonize Bacon because of Bacon's status as an African-American.

(69)   Tippens unjustly reprimands Bacon for false accusations. Bacon told a subordinate employee not to get a haircut during office hours, but the subordinate employee got one anyway. Tippens reprimanded Bacon for this, without giving Bacon an opportunity to defend himself. Sergeant Kovalsky, Sergeant Cassinelli, Officer Casella, and Sergeant Mitchell, all Caucasian employees, each were caught abandoning their posts but were not reprimanded by Tippens.

(70)   Bacon was denied various promotions that he was qualified for due to his status as an African-American. Bacon applied for a Lieutenant position which was given to Scott Thomas, a Caucasian with less supervisory experience than Bacon and who was less senior than Bacon. Bacon applied for a Correction Supervisor position in 1991, which was given to Dale Pienaizek, a Caucasian who had less experience than Bacon and who was less senior than Bacon.

(71)   The plaintiffs have each been subjected to a custom and of racial and gender discrimination, sexual harassment, racial and gender epithets, racist and gender employment decisions, differential treatment based on race and gender, differential pay based on race and gender, a pattern and practice of racial and gender discrimination, failure to promote based on race and gender, demotions based on race and gender, terminations based on race and gender, constructive discharges based on race and gender, and a "glass ceiling" in promotional practices based on race and gender.

14

COUNT I

**TITLE VII -- RACE/NATIONAL ORIGIN**
FAILURE TO PROMOTE\DISPARATE TREATMENT\HOSTILE
ENVIRONMENT\TERMINATION\CONSTRUCTIVE DISCHARGE
**PLAINTIFFS BYTHWOOD, SMITH, AND MCDANIEL AGAINST MCI**

(72)    Paragraphs 1 through 71 are realleged as if fully rewritten herein

(73)    MCI, its agents and employees, engaged in discrimination based on race and national origin as heretofore described.

(74)    As a direct and proximate result of said acts, plaintiffs have suffered and continue to suffer loss of employment, loss of income, loss of employment benefits, distress, humiliation, great expense, embarrassment, and damage to their reputations.

WHEREFORE, plaintiff demands judgment against defendants:

(a)    for lost wages and all other sums of money, including retirement benefits, accrued sick pay, health insurance, life insurance, disability insurance, all fringe benefits and all other employment benefits which were lost, together with interest on said amounts;

(b)    for compensatory damages;

(c)    for punitive damages;

(d)    enter an order declaring defendants' employment practices unlawful;

(e)    for a judgment representing prejudgment interest;

(f)    for reinstatement, and if not practical, front pay;

(g)    for the costs of this action, including an award of reasonable attorney's fees pursuant to 29 U.S.C. Section 626(b) and 216(b).

15

COUNT II

## 42 U.S.C. § 1981 AND 42 U.S.C. § 1983[2] -- RACE/NATIONAL ORIGIN/GENDER
FAILURE TO PROMOTE\DISPARATE TREATMENT\HOSTILE ENVIRONMENT\
TERMINATION\CONSTRUCTIVE DISCHARGE
## EACH PLAINTIFF AGAINST EACH DEFENDANT

(75)     Paragraphs 1 through 71 are realleged as if fully rewritten herein.

(76)     The above-described discriminatory treatment committed by defendants violated the

Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1981 by impinging on

plaintiffs' right to contract for, obtain, and maintain employment free of racial/national origin/gender

discrimination.

(77)     As a direct and proximate result of the aforementioned acts, plaintiffs have suffered

and continue to suffer loss of employment, loss of income, loss of employment benefits, distress,

humiliation, great expense, embarrassment, and damage to their reputations.

WHEREFORE, plaintiffs demand judgment against each defendant as follows:

(a)     for lost wages and all other sums of money, including retirement benefits, accrued sick
        pay, health insurance, life insurance, disability insurance, all fringe benefits and all
        other employment benefits which were lost, together with interest on said amounts;

(b)     for compensatory damages;

(c)     for punitive damages;

(d)     enter an order declaring defendants' employment practices unlawful;

(e)     for a judgment representing prejudgment interest;

(f)     for reinstatement, and if not practical, front pay;

(g)     for the costs of this action, including an award of reasonable attorney's fees pursuant

---

[2] Plaintiffs sue each individual defendant under 1981 and 1983. Plaintiffs sue the municipal
defendant under 1983 only as plaintiffs understand that 1981 actions against municipal defendants
must be brought via a 1983 claim.

16

to 29 U.S.C. Section 626(b) and 216(b).

## COUNT III
### FLORIDA CIVIL RIGHTS ACT OF 1992 -- RACE/NATIONAL ORIGIN
FAILURE TO PROMOTE\DISPARATE TREATMENT\HOSTILE
ENVIRONMENT\TERMINATION\CONSTRUCTIVE DISCHARGE
### PLAINTIFFS BYTHWOOD, SMITH, AND MCDANIEL AGAINST MCI

(78)    Paragraphs 1 through 71 are realleged as if fully rewritten herein.

(79)    The above-described discriminatory treatment committed by defendants violated the

Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 (1992)'s prohibition on racial/national origin

discrimination.

(80)    Defendant has intentionally discriminated against plaintiffs in violation of the Florida

Civil Rights Act's proscription of racial/national origin discrimination, causing pain, suffering, and

humiliation.

WHEREFORE plaintiff demands judgment against defendant:

(a)    for lost wages and all other sums of money, including retirement benefits, accrued sick
pay, health insurance, life insurance, disability insurance, all fringe benefits and all
other employment benefits which were lost, together with interest on said amounts;

(b)    for compensatory damages;

(c)    for punitive damages;

(d)    enter an order declaring defendants' employment practices unlawful;

(e)    for a judgment representing prejudgment interest;

(f)    for reinstatement, and if not practical, front pay;

(g)    for the costs of this action, including an award of reasonable attorney's fees pursuant
to 29 U.S.C. Section 626(b) and 216(b).

17

COUNT IV
## TITLE VII -- RACE/NATIONAL ORIGIN/GENDER -- RETALIATION/
## 42 U.S.C. § 1981 -- RACE/NATIONAL ORIGIN/GENDER -- RETALIATION/FLORIDA
## CIVIL RIGHTS ACT -- RACE/NATIONAL ORIGIN/GENDER --RETALIATION
FAILURE TO PROMOTE\DISPARATE TREATMENT\HOSTILE
ENVIRONMENT\CONSTRUCTIVE DISCHARGE\TERMINATION
## AGAINST DEFENDANT MCI AS TO ALL COUNTS AND AGAINST THE
## INDIVIDUAL DEFENDANTS AS TO THE 42 U.S.C. § 1981 AND § 1983[3] COUNT

(81)     Paragraphs 1 through 71 are realleged as if fully rewritten herein

(82)     Defendants, its agents and employees, engaged in discrimination based on plaintiffs'

filing of Charges of Discrimination with the EEOC and the FCHR.

(83)     Because plaintiffs filed EEOC/FCHR charges, they were subjected to unlawful

retaliation by subjection to a hostile environment, were not promoted, and were treated disparately,

were constructively discharged, and were terminated.

(84)     As a direct and proximate result of said acts, plaintiffs have suffered and continue to

suffer, distress, humiliation, embarrassment, and damage to their reputations.

WHEREFORE, plaintiff demands judgment against defendants:

(a)     for lost wages and all other sums of money, including retirement benefits, accrued sick
        pay, health insurance, life insurance, disability insurance, all fringe benefits and all
        other employment benefits which were lost, together with interest on said amounts;

(b)     for compensatory damages;

(c)     for punitive damages;

(d)     for the costs of this action, including an award of reasonable attorney's fees pursuant
        to 29 U.S.C. Section 626(b) and 216(b).

(e)     enter an order declaring defendants' employment practices unlawful;

---

[3] Plaintiffs sue each individual defendant under 1981 and 1983. Plaintiffs sue the municipal
defendant under 1983 only as plaintiffs understand that 1981 actions against municipal defendants
must be brought via a 1983 claim.

(f)     for a judgment representing prejudgment interest;

(g)     for reinstatement, and if not practical, front pay.

*JURY TRIAL DEMAND*

Plaintiff demands a trial by jury for all issues so triable.  Pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Respectfully submitted,

DATE: 12-5 96

_____
NORMAN E. GANZ
Attorney for Plaintiff
1402 E. Las Olas Blvd., Suite 1750
Ft. Lauderdale, FL  33304
FBN 878405
(954) 522-8850

**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

DLP:RLW:ljt

*Washington, DC  20530*

September 6, 1996

CERTIFIED MAIL

Mr. Wayne M. Bythwood
c/o Nicole F. Ehart, Esquire
Attorney at Law
915 Middle River Drive, Ste. 420
Fort Lauderdale, FL 33304

      Re:  EEOC Charge Against Florida Department of Corrections and
           Martin Correctional Institution
           No. 150944016

Dear Mr. Bythwood:

      Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the
date the Commission assumed jurisdiction over that charge, and no suit
based thereon has been filed by this Department, and because you
through your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.
2000e, et seq., against the above-named respondents.

      If you choose to commence a civil action, such suit must be filed
in the appropriate Court within 90 days of your receipt of this
Notice.

      The investigative file pertaining to your case is located in the
EEOC District Office, 1 Biscayne Tower, Suite 2700, 2 South Biscayne
Boulevard, Miami, Florida  33132.

      This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                        Sincerely,

                        Deval L. Patrick
               Assistant Attorney General
                 Civil Rights Division

          By:

                        Rita L. Wilson
                   Civil Rights Analyst
            Employment Litigation Section

cc: EEOC District Office
    State of Florida, Department of Corrections/Martin
      Correctional Institution
    Ms. Marian Deadwiley, Supervisor, Civil Rights Unit

Exhibit "A"



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

*Washington, DC  20530*

DLP:RLW:ljt

September 6, 1996

CERTIFIED MAIL

Mr. James H. Smith
c/o Nicole F. Ehart, Esquire
Law Office of Norman E. Ganz
Attorneys at Law
915 Middle River Drive, Ste. 420
Ft. Lauderdale, FL 33304

      Re:  EEOC Charge Against State of Florida, Department of
           Corrections and Martin Correctional Institute
           No. 150944018

Dear Mr. Smith:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the
date the Commission assumed jurisdiction over that charge, and no suit
based thereon has been filed by this Department, and because you
through your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.
2000e, *et seq.*, against the respondents named in your charge.
     If you choose to commence a civil action, such suit must be filed
in the appropriate Court within 90 days of your receipt of this
Notice.
     The investigative file pertaining to your case is located in the
EEOC District Office, 1 Biscayne Tower, Suite 2700, 2 South Biscayne
Boulevard, Miami, Florida 33132.
     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                        Sincerely,

                        Deval L. Patrick
                 Assistant Attorney General
                    Civil Rights Division

           By:     *Kenneth Greaves for*
                     Rita L. Wilson
                    Civil Rights Analyst
             Employment Litigation Section

cc: EEOC District Office
    State of Florida, Department of Corrections
    Martin Correctional Institute
    Marian Deadwiley, Supervisor, Civil Rights Unit

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**96 - 14351CIV-PAINE**   *MAGISTRATE JUDGE VITUNAC*

**I (a) PLAINTIFFS**  Wayne Bythwood, et. al.

**DEFENDANTS**  State of Florida Department of Corrections a/k/a Martin Correctional Institution, et. al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Martin
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Martin
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

2.96cv 14351-Paine - mag Vitunac

**NIGHT BOX**
**FILED**
**DEC - 5 1996**
CARLOS JUENKE
CLERK, USDC / SDFL / FTL

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  Law Office of Norman Ganz  (954)522-5850  1402 E. Las Olas Blvd. Ste. 1750  Ft. Lauderdale, FL 33301

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, **MARTIN**, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)

- [ ] 1. U.S. Government Plaintiff
- [x] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Employment Discrimination - Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq., 42 U.S.C. §1981, 42 U.S.C. §1983, the Florida Civil Rights Act of 1992, a la stat. §760.10 (1992).

____ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B | B FORFEITURE / PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 States Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury-Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury-Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce/ICC Rates/etc. B |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | PERSONAL PROPERTY | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 650 Airline Regs | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans) B | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending B | [ ] 660 Occupational Safety/Health | B SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits B | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholder's Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | A LABOR | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12USC3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Management Relations B | [ ] 864 SSID Title XVI | [ ] 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | [ ] 730 Labor/Management Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 740 Railway Labor Act | A FEDERAL TAX SUITS | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure B | [ ] 442 Employment | | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General † | [ ] 791 Employee Ret. Inc. Security Act B | [ ] 871 IRS-Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other † | | | [ ] 890 Other Statutory Actions † * A or B |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights * A or B | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [x] 1. Original Proceeding
- [ ] 2. Removed From State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Refiled
- [ ] 5. Transferred from another district (Specify)
- [ ] 6. Multidistrict Litigation
- [ ] 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
[ ] UNDER F.R.C.P. 23

DEMAND $ ____

Check YES only if demanded in complaint.
**JURY DEMAND:** [ ] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY

(See Instructions):

JUDGE ____  DOCKET NUMBER ____

DATE  12/5/96

SIGNATURE OF ATTORNEY OF RECORD  Norman E. Ganz
LAW OFFICE OF NORMAN E. GANZ
1402 E. LAS OLAS, 1750
FT. LAUDERDALE FL 33301

UNITED STATES DISTRICT COURT
S/F 1-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 510610
Date Paid: 12-06-96

Amount $120.00
M/fp: ____